1
2
3
4
5
6
7
8
9
10                           UNITED STATES DISTRICT COURT

11                           EASTERN DISTRICT OF CALIFORNIA

12

13 RAYMOND BALDHOSKY,                 CASE NO. 1:12-cv-01200-LJO-MJS (PC)

14              Plaintiff,

15     v.                              **FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**

16 SUSAN HUBBARD, et al.,

17             Defendants.          **(ECF No. 28)**

18

19

20       Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this

21 civil rights action brought pursuant to 42 U.S.C. § 1983. He has consented to Magistrate

22 Judge jurisdiction. (ECF No. 6.) Several of the defendants have appeared in the action

23 and declined to consent to Magistrate Judge jurisdiction. (ECF Nos. 38, 92, 107.)

24       On May 4, 2016, the Court screened Plaintiff's complaint and dismissed several of

25 his Eighth Amendment medical indifference claims with prejudice. (ECF No. 31.) The

26 case has since proceeded against Defendants Drs. Gonzalez, Nguyen, and Metts; PAs

27 Peters and Byers; and Nurses Grossi, Ruff, Indindes, Kaylor, and Dunn on Eighth

28

Amendment claims for medical indifference as set forth in the Court's screening order. (Id.)

## I. __Williams v. King__

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the first amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

## II. Findings and Recommendations on Third Amended Complaint

### A. Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## C.    Plaintiff's Allegations

Plaintiff complains of acts that occurred during his incarceration at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. He names the following Defendants in their individual capacities: Doctors Gonzalez, Nguyen, Olga Veregovskay, and Metts; Physician's Assistants ("PA") L. Peters and T. Byers; and Nurses T. Grossi, Ruff, Indindes, Amanda Kaylor, and Dianna Dunn. Although the Court previously found that Plaintiff stated cognizable claims against Nurses Rapozo and

3

Corey, Plaintiff has not named these individuals as Defendants in his third amended complaint.

Plaintiff's allegations relate generally to Defendants' failure to prevent, and later treat, pressure sores and related infections. He alleges that each of the Defendants personally ignored risks to Plaintiff's health and also failed to supervise other nurses. He also claims that Defendants, and particularly Defendant Veregovskay, "medically abandoned" him upon his release from prison. His allegations may be summarized essentially as follows.

**1.      Overview and General Allegations**

Plaintiff has a spinal cord injury and is confined to a wheelchair. He suffers from back and shoulder injuries, poor upper body strength, and the inability to balance himself without help. Prior to transferring to CSATF, he was housed at California State Prison – Corcoran in a Medical Outpatient Housing Unit ("MOHU"). There, he had a medical bed with rails to assist with activities of daily living ("ADLs") and he had a work release order. While in this housing environment, Plaintiff never had a Stage II pressure sore.

When he transferred to CSATF, he was placed in the general population. However, Plaintiff's medical needs could not be effectively accommodated in the general population. Except for various hospital admissions, he was incarcerated at CSATF from May 2009 until his release on July 27, 2010.

Shortly after arriving at CSATF, Plaintiff began complaining of his housing placement and lack of accommodations. He complained that he was not properly evaluated and that his limitations were being ignored. He complained that he did not have a medical bed, proper commode, or supplies needed for proper bowel management. Plaintiff states that he was injured as a result of attempting to maneuver in and out of his bed, as well as falling from his bed. He had skin breakdown as the result of his bowel difficulties. Plaintiff does not attribute these initial complaints – those occurring prior to June 30, 2009 -- or the failure to address them to any particular

defendant or individual.

Plaintiff alleges generally that medical care at CSATF fell below acceptable standards. As an example, Nurse Ruff was the "gatekeeper" for medical care on Plaintiff's yard. According to Plaintiff, she treated inmates poorly, did not employ appropriate medical judgment, was the subject of numerous complaints from inmates and family, and threatened or humiliated inmates seeking treatment. This disrespect for inmates' needs was present throughout the facility.

Plaintiff's specific allegations are as follows.

### 2.      Failure to Accommodate and Stage II Pressure Sore

On June 30, 2009, Plaintiff was seen by Defendant PA Peters, who failed to properly examine Plaintiff, make an accurate diagnosis, determine a proper care plan, or assess the need for medical equipment. Defendant PA Peters also rescinded Plaintiff's cell assignment and had him sent to a dormitory where he was at increased risk of harm.

On July 3, 2009, Plaintiff was seen by Defendant Dr. Gonzalez. Plaintiff apparently was already suffering from skin deterioration at this time. Plaintiff presented a list of equipment he believed he needed to properly manage his medical needs. Dr. Gonzalez did not examine Plaintiff and refused Plaintiff's request for a medical bed and housing accommodation. As a result, Plaintiff sustained shoulder, hip, and back injuries from falling off of an inappropriate bed. He also suffered "continued skin breakdown, physical deterioration and inability to care for one's self." Dr. Gonzalez did provide Plaintiff with bowel care supplies. However, he ignored Plaintiff's back and shoulder injuries, thus restricting Plaintiff's ability to function in the general population. He refused to order bed rest to allow Plaintiff's wound to heal. According to Plaintiff, it was obvious that his wound would enlarge into a "full blown pressure sore" if such measures were not taken.

On July 7, 2009, Plaintiff requested physical therapy and replacement of worn out stretch bands. Defendant Peters denied the request and confiscated Plaintiff's old

stretch bands.

On July 17, 2009, Plaintiff was treated for a Stage II pressure sore by Nurse Jane Doe 1. Plaintiff makes various allegations against Nurse Doe 1, but identifies her as a non-party. Accordingly, these allegations will not be discussed further.

On July 18, 2009, Jane Doe Nurses 2-5 refused to comply with orders to provide adequate medical supplies that Plaintiff needed for bowel and bladder maintenance. Although Plaintiff alleges that this conduct was a proximate cause of his injuries, he identifies these nurses as non-parties. Accordingly, these allegations will not be discussed further.

On July 31, 2009, Plaintiff met with Defendant Dr. Nguyen and provided him with a list of medical concerns regarding review of x-rays, back pain, edema, pressure release issues, physical therapy and stretch band replacement, designation as 'medically unassigned' for skin breakdown, bowel issues, replacement of the catheter, and groin rash. Dr. Nguyen asked Plaintiff to leave the room while he reviewed Plaintiff's health records, but never asked Plaintiff to return. Dr. Nguyen never examined Plaintiff, never treated him, and never addressed any of Plaintiff's concerns.

On August 30, 2009, Plaintiff was seen by non-party Nurse Sagado, who observed that a new pressure sore was developing. The next day, September 1, 2009, Plaintiff was seen by Defendant Nurse Grossi. Grossi assessed the new wound. She ordered wet to dry dressing to be changed once per day, but did not issue a bed rest or work release order to allow the wound to heal. According to Plaintiff, such failures are contrary to standard treatment and would obviously lead to deterioration of his wounds. On September 8, 2009, Nurse Grossi examined the wound and again refused to grant a work release order even though the wound was larger.

On September 21, 2009, PAs Peters and Byers reviewed Plaintiff's medical condition but refused to grant bedrest or work and school restrictions. According to Plaintiff, such treatment is contrary to standard protocol.

Defendants' failure to properly examine Plaintiff and order necessary accommodations created an environment that worsened his pressure sores and led to the eventual development of MRSA and osteomyelitis.

### 3. Stage III Pressure Sore

By September 23, 2009, Plaintiff's pressure sore had reached Stage III. On that date, Plaintiff was seen by PA Peters, who refused to issue a work release order. Plaintiff's regular assignments required that he sit for up to eight hours on the pressure sore. Plaintiff contends that Peters knew such treatment would lead to serious injury.

On September 28, 2009, Plaintiff reported on CDC Form 7632 that his pressure sore had reached a "severe condition." Defendants Gonzalez, Nguyen, Gross, Peters, and Byers did not respond. He also submitted a health care request form asking to be seen by a specialist and for a lay-in order for pressure relief.

On October 12, 2009, Plaintiff submitted another Form 7632 requesting to be seen by his primary care physician. He reported that his pressure sore was discharging puss, fat, and skin tissue.

On October 14, 2009, Plaintiff submitted an emergency appeal to obtain medical care after a non-party nurse advised him his wound was not healing properly.

On October 19, 2009, Plaintiff was seen by PA Peters. Peters suggested a two hour off and one hour on schedule of pressure release but did not issue an order. On an unspecified date[1], Defendant Nurse Ruff refused to change Plaintiff's dressing for his Stage III pressure sore after it had become soiled. Nurse Ruff also directed another staff person and an inmate to place Plaintiff on an examination table incorrectly, resulting in pain and injury to Plaintiff.

On October 21, 2009, PA Byers issued a 50% reduction in Plaintiff's work and school assignments, but only when Plaintiff's pressure sores were present. PA Byers did not examine Plaintiff. Had he examined Plaintiff, he would have provided competent

---

[1] Plaintiff's second amended complaint identified this conduct as having occurred on October 19, 2009.

medical care and accommodations necessary to treat Plaintiff's condition. Plaintiff alleges that Byers is not competent.

### 4.    First Hospital Admission

On October 24, 2009, Plaintiff saw Defendant Nurse Indindes. He had excessive draining from his pressure sore and visible oozing through his clothing. Nurse Indindes told Plaintiff to return in 12 hours. When Plaintiff did return, he advised that he was suffering from hot and cold chills, body aches, malaise, and dry mouth for 2-3 days. His temperature was 101 degrees. Plaintiff was immediately transported to Mercy Hospital in Bakersfield, California, and underwent debridement of a Stage III pressure sore and treatment of wound and urinary tract infections.

Upon discharge on November 2, 2009, Plaintiff returned to CSATF. On November 5, 2009, Plaintiff had two medical appointments, one of which was with PA Peters. In each case, he was required to sit on his wound for two hours waiting to be seen.

### 5.    Refusal to Clean and Dress Wound

On November 13, 2009, Plaintiff suffered an unintended bowel movement and soiled his dressing and wound. Plaintiff reported the issue to Defendant Nurse Kaylor and to Nurses Rapozo and Corey,[2] and asked for a dressing change. These nurses refused to clean and dress the wound, telling Plaintiff to come back later.

On November 14, 2009, Plaintiff suffered another unintended bowel movement and again soiled his dressing and wound. Defendant Nurse Kaylor refused to clean and dress the wound, telling Plaintiff to return in eight hours. When Plaintiff insisted, Defendant Nurse Kaylor forced Plaintiff to wait for over an hour before cleaning and dressing the wound.

On November 23, 2009, Plaintiff soiled his dressing and wound a third time. Defendant Nurse Dunn refused to clean and dress the wound.

### 6.    Second Hospital Admission

---

[2] As previously stated, Nurses Rapozo and Corey are not named as Defendants.

On December 4, 2009, Plaintiff was forced to sit on his pressure sore for 2 hours and 15 minutes before being seen by PA Peters. PA Peters then denied Plaintiff's requests for a transfer to a medical facility that could adequately treat what had become a Stage IV pressure sore.

On December 10, 2009, Nurse Jane Doe 5 changed Plaintiff's dressing and noted that Plaintiff's pressure sore wound exposed the bone and was still discharging foul smelling pus, fat, and muscle. The nurse said that Plaintiff should be in a hospital, but did nothing to ensure that Plaintiff got to one. Plaintiff identifies this nurse as a non-party.

On December 18, 2009, non-party Nurse Reposo changed Plaintiff's dressing and noted that the wound looked very bad. Plaintiff was transferred to San Joaquin Community Hospital. He was seen by non-party Dr. Freeman. His wound was debrided.

Plaintiff was discharged from the hospital in January 2010 and admitted to the Acute Care Hospital at Corcoran State Prison for further treatment, including intravenous antibiotics.

On January 24, 2010, Dr. Freeman, examined the wound and proposed surgery for February 15, 2010. Defendant Veregovskay did not make Plaintiff available to Dr. Freeman for the surgery. Plaintiff later was informed that an error had been made in scheduling the surgery. As discussed below, the surgery was eventually performed on March 14, 2010.

### 7. Skin Flap Surgery

Plaintiff underwent skin flap surgery on March 14, 2010, and afterward was discharged to CSATF. There, on or about March 21, 2010, Defendant Dr. Metts ordered that Plaintiff be transferred from his bed using a Hoyer lift, despite knowing that use of this lift would damage the vulnerable tissue because it would focus a substantial amount of pressure on the surgical area. The transfer did indeed damage the tissue of the surgical flap, and Plaintiff had to undergo a second skin flap surgery.

On April 2, 2010, following the second surgery, Dr. Freeman ordered post-

operative examinations in 2-4 weeks, or earlier as needed. Defendant Dr. Veregovskay instead decided to treat and monitor Plaintiff's wound herself. According to Plaintiff, Dr. Veregovskay's treatment led to an undetected abscess below the surface of the wound that required a third operation following Plaintiff's release from prison. That procedure resulted in a 15 month hospital confinement.

### 8. Medical Care Following Release from Prison

Sometime before his release from prison, Plaintiff apparently asked through the administrative appeal process about the medical care that he would receive following his release. On June 9, 2010, he was informed at the informal level that "the medical department will find a medical facility for your placement." An appeals coordinator later told Plaintiff that the medical department would find a medical facility for his placement and that his parole agent would be notified. Dr. Veregovskaya also told Plaintiff that that all medical arrangements for his pending release would be made.

Following Plaintiff's release on July 27, 2010, and despite Dr. Veregovskaya's assurances, there was no medical transport to Plaintiff's home city, no medical facility to check into, and no accommodation to transport Plaintiff and his medical equipment and supplies. Plaintiff thus had to transport himself and this required him to sit on the surgery site for six hours.

### 9. Stage IV Pressure Sore

On July 26, 2010, the day before Plaintiff's release, Plaintiff noticed a red spot about 2" in diameter in the area of the existing pressure sore. Plaintiff showed the spot to non-party CDCR nursing staff who opined that it was just a scrape or a Stage 1 pressure sore. The spot did not go away. A few days later, Plaintiff had the wound dressed by a doctor at an acute care clinic. The red spot still did not improve. Approximately three weeks after his release, Plaintiff awoke in a pool of blood and tissue discharge. He was admitted to Ventura County Medical Center Emergency Room with a Stage IV pressure sore and osteomyelitis, transferred to the Veteran's Administration Hospital in West Los

Angeles, and then spent seven months in the Spinal Cord Injury Ward in Long Beach.

### 10. Relief Sought

Plaintiff brings suit against Defendants for violation of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and deliberate indifference. He seeks money damages.

### D. Analysis

Plaintiff's factual allegations against the named Defendants are largely unchanged from those found non-cognizable in his prior pleading. Plaintiff presents new argument as to why claims previously found non-cognizable should be allowed to proceed. He provides medical materials relating to the care of pressure sores to support these arguments. However, he does not provide measureably greater factual detail regarding the specific conduct of the named Defendants. Because Plaintiff's factual allegations are largely unchanged, the Court finds itself repeating much of its original screening order.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need. Id. at 1059. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60. Plaintiff has

sufficiently alleged a serious medical need by asserting that he is paraplegic and suffered from significant pressure sores.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at 1060. Deliberate indifference may be shown when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which they provide medical care. Id. at 1062. A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. Id. at 1059; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

### 1. Linkage

Under § 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). As stated above, Plaintiff's raises some general allegations that are directed toward all of the Defendants collectively. For example, he alleges that all Defendants failed to respond to his administrative appeals. However, this allegation does not provide the necessary linkage between the Defendants' individual conduct and the deprivation of

Plaintiff's rights because it does not reflect that each individual Defendant knew of, but disregarded a substantial risk to Plaintiff's health. Leer, 844 F.2d at 634.

Moreover, liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Conclusory claims that the Defendants failed to supervise other nursing staff are not sufficient to state a claim.

### 2. Substantive Analysis

### a. Cognizable Claims

The Court concludes that Plaintiff has adequately alleged deliberate indifference on the part of the following Defendants on the following bases:

**Dr. Gonzalez.** Plaintiff contends that, at the time he saw Dr. Gonzalez he already was suffering skin deterioration. Gonzalez was given a list of Plaintiff's concerns and the accommodations Plaintiff believed he needed, but nonetheless refused to examine him.

**Dr. Nguyen.** Plaintiff contends that he met with this doctor, who certainly should have known that Plaintiff was a paraplegic confined to a wheelchair; that this doctor was given a list of Plaintiff's concerns, including pressure release issues, and reviewed Plaintiff's health records; and that the doctor nevertheless refused to examine or treat Plaintiff.

**Nurse Grossi, PA Peters and PA Byers.** Plaintiff contends that these Defendants failed to order work or school restrictions, issue lay-in orders, or place Plaintiff on bed rest despite the presence and progression of Plaintiff's pressure sores. Plaintiff submits evidence indicating that pressure release is the first and foremost line of

defense in treating pressure sores. Although not dispositive, such evidence is sufficient to suggest that, in failing to order some form of pressure release when pressure sores were present, these Defendants were deliberately indifferent to a serious risk of harm to Plaintiff.

**Nurses Ruff, Indindes, Kaylor, and Dunn.** Plaintiff contends that these Defendants refused to change his soiled and/or visibly oozing dressings.

**Dr. Metts.** Plaintiff claims that Dr. Metts used a Hoyer lift to transfer Plaintiff against Plaintiff's surgeon's instructions despite knowing that it would create a serious risk of substantial harm to Plaintiff (by concentrating pressure on the surgical area), and that this conduct did in fact result in serious damage requiring a second surgery.

### b.    Non-Cognizable Claims

Even if assumed, as it should be, that the medically trained Defendants who treated and/or examined Plaintiff were aware of, or surely should have been aware of, the nature and extent of Plaintiff's condition, many of Plaintiff's allegations reflect only his rather strong, and perhaps justified, disagreement with their treatment. The allegations as to the claims discussed below do not support a claim that the Defendants actually knew that their diagnosis and treatment, or failure to treat, would, or was likely to, cause or allow harm to Plaintiff. At most, these allegations suggest professional negligence; indeed, Plaintiff's allegation that some of the Defendants were incompetent suggests malpractice, rather than deliberate indifference. As noted, malpractice is not sufficient to support a claim of constitutional violations.

In applying the deliberate indifference standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A complaint that a medical professional has been negligent in diagnosing or treating a medical condition, or

otherwise committed malpractice, does not state a valid claim of medical mistreatment under the Eighth Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, a mere difference of opinion between the prisoner and the prison medical authorities regarding treatment does not amount to deliberate indifference. Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). For a difference of opinion to rise to the level of deliberate indifference, plaintiff must establish that the course of treatment chosen was "medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to plaintiff's health. Jackson, 90 F.3d at 332. The facts presented simply do not meet this requirement. Even if Plaintiff is correct in his belief that Defendants created an environment that caused or worsened the pressure sores and led to the eventual development of MRSA and osteomyelitis, he has not alleged a constitutionally prohibited deliberate indifference.

On the foregoing grounds, the Court finds that Plaintiff has failed to assert constitutional violations against the following Defendants with regard to the following alleged acts or inaction: (1) **PA Peters** for not providing Plaintiff a "proper" care plan, medical equipment, or stretch bands; (2) **Nurse Ruff** for not correcting the alignment of Plaintiff's body on the examination table[3]; (3) **Dr. Gonzalez** for not ordering a medical bed or addressing Plaintiff's inability to conduct ADL[4]; and (4) **Dr. Veregovskay** for failing to schedule Plaintiff's skin flap surgery due to error.

The Court is not unsympathetic to Plaintiff's medical condition or the certainly reasonable belief that his condition unnecessarily worsened while at CATSF. One

---

[3] Plaintiff does not allege that Defendant Nurse Ruff was aware that this alignment was causing Plaintiff pain, and he does not assert how long he remained on the table.

[4] Plaintiff claims that this Defendant's conduct resulted in injuries after Plaintiff fell off of an inappropriately assigned bed. An injury following a Defendant's conduct, standing alone, does not establish deliberate indifference. Plaintiff must allege facts that this Defendant's decision was medically unacceptable or was chosen in conscious disregard of an excessive risk to Plaintiff's health. At best, Plaintiff's claim as to Dr. Gonzalez amounts to a difference of opinion as to a course of treatment.

cannot help but ask why at least some of the Defendants did not act more aggressively in treating what appeared to be a chronic and chronically worsening condition not uncommon among paraplegics.  But, again, such concerns are not sufficient to meet the very high threshold needed to assert unconstitutional deliberate indifference. Plaintiff must put forth facts, not just his lay opinion, that Defendants' acts or failure to act were such as to reflect a knowing disregard for the likelihood they would create an excessive risk to Plaintiff's health.

Turning to Plaintiff's claim that he had to wait for 2 hours before being seen by Defendant PA Peters, a delay in treatment does not constitute an Eighth Amendment violation unless it caused substantial harm. Wood v. Housewright, 900 F.2d 1332, 1334-35 (9th Cir. 1999); see also Brigaerts v. Cardoza, 28 F.3d 105 (9th Cir. 1994) ("To prevail on a claim of medical indifference, a prisoner must show that the denial of adequate medical care caused him harm.") There is no allegation that Plaintiff was substantially harmed by these delays.

Plaintiff claims that Dr. Veregovskay did not schedule post-operative appointments with Dr. Freeman, and instead chose to provide Plaintiff's post-operative care herself. Deliberate indifference may be shown when prison official ignore express orders from a prisoner's treating physician. See Estelle, 429 U.S. at 104-05 (deliberate indifference may manifest "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); Colwell v. Bannister, 763 F.3d 1060, 1068-69 (9th Cir. 2014) (reiterating that prison's reliance on non-specialist prison physicians' opinions who make decisions based on policy, rather than specialists contradictory opinions, satisfies deliberate indifference standard); Jett, 439 F.3d at 1097-98 (prison doctor may have been deliberately indifferent to a prisoner's medical needs when he decided not to request an orthopedic consultation as the prisoner's emergency room doctor had previously ordered); Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir.

16

2000) (a prisoner may establish deliberate indifference by showing that a prison official intentionally interfered with his medical treatment); Wakefield v. Thompson, 177 F.3d 1160, 1165 & n.6 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."). However, Plaintiff does allege facts to suggest that the treatment provided by Dr. Veregovskay differed from that which Dr. Freeman prescribed or recommended.

Finally, Plaintiff claims that Dr. Veregovskay "abandoned" him by failing to make various arrangements for Plaintiff's care following his release from prison. In limited circumstances, prison officials may violate the Eighth Amendment by failing to provide for an inmate's immediate medical needs upon release. Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir.1999) (holding that "the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply"); see also Lugo v. Senkowski, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) (holding that the State "has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment on his own behalf" (internal quotation marks and citation omitted)).

Here, however, Plaintiff does not allege facts to suggest that he was receiving continuing or ongoing treatment at the time he was released. Plaintiff underwent surgery on March 14, 2010. He was to follow up in two to four weeks. He was released on July 27, 2010, approximately four months following his surgery. At that time, he had what prison medical staff believed to be at most a Stage I pressure sore. Indeed, even the physician Plaintiff saw at a non-custodial acute care clinic did nothing more than dress Plaintiff's wound. There is nothing to indicate that Plaintiff was in the midst of an ongoing course of treatment at the time of his release, or that Dr. Veregovskay was deliberately

indifferent to Plaintiff's continuing need to receive immediate and ongoing medical treatment. Accordingly, this allegation fails to state a claim.

### III. Conclusion and Recommendation

In sum, Plaintiff's third amended complaint states cognizable Eighth Amendment medical indifference claims against Drs. Gonzalez, Nguyen, and Metts; PAs Peters and Byers; and Nurses Grossi, Ruff, Indindes, Kaylor, and Dunn on the bases set forth in Section II(D)(2)(a) of this order. The remaining allegations in Plaintiff's third amended complaint do not state a cognizable claim for relief.

Accordingly, it is HEREBY RECOMMENDED that this action continue to proceed only on Plaintiff's cognizable Eighth Amendment medical indifference claims against Drs. Gonzalez, Nguyen, and Metts; PAs Peters and Byers; and Nurses Grossi, Ruff, Indindes, Kaylor, and Dunn on the bases set forth in Section II(D)(2)(a) of this order, and that all other Defendants, and all other claims asserted in the third amended complaint, be DISMISSED WITH PREJUDICE.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.


Dated:   December 1, 2017            /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE