UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND BALDHOSKY,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN HUBBARD, *et al.*,<br><br>Defendants. | Case No. 1:12-cv-01200-LJO-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BE DENIED<br><br>ECF No. 168<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

**I.     INTRODUCTION**

Plaintiff is a state prisoner proceeding with counsel in this civil rights action brought under 42 U.S.C. § 1983. ECF No. 28. This action now proceeds on the third amended complaint, filed on October 28, 2015, against Drs. Gonzalez, Nguyen, and Metts; Physician Assistants Peters and Byers; and Nurses Grossi, Ruff, Indendi, Kaylor, and Dunn. ECF No. 139. Plaintiff alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment. ECF No. 28 at 24-29.

On November 16, 2018, defendants Dunn, Indendi, Kaylor, and Ruff moved for partial summary judgment. ECF No. 168. Plaintiff filed an opposition on December 17, 2018, ECF No. 173, and defendants filed a reply on January 8, 2019, ECF No. 176. The motion was submitted

on the record without oral argument under Local Rule 230(*l*). For the reasons set forth below, we recommend that the court deny defendants' motion.

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the

moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

      The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *accord Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### b. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the

3

need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### III. SUMMARY JUDGMENT RECORD

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c). Those materials include depositions, documents, electronically-stored information,

affidavits or declarations, stipulations, party admissions, interrogatory answers, "or other materials." Fed. R. Civ. P. 56(c). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment motion to determine what materials the court may consider, *see Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004). Here, defendants present the declaration of Dunn, ECF No. 168-3; the declaration of Indendi, ECF No. 168-4; the declaration of Kaylor, ECF No. 168-5; and the declaration of defendants' attorney Diana Esquivel and accompanying exhibits, ECF No. 168-6. Plaintiff presents his declaration, ECF No. 173-3; and the declaration of his expert, Tara M. Godoy, and accompanying exhibits, ECF No. 173-4; ECF No. 173-5; ECF No. 173-6. We will also consider plaintiff's third amended complaint ("TAC") to be part of the summary-judgment record. ECF No. 28.

**A. Defendants' Objections to Plaintiff's Declaration**

Defendants object to the admissibility of certain paragraphs in plaintiff's declaration.[1] ECF No. 176 at 4 (objecting to "paragraphs 9 to 20, 28, and 29"). Defendants contend that these paragraphs "contradict[] or [are] inconsistent with [plaintiff's] deposition testimony and include[] information requested at his deposition, but which he failed to provide." *Id.* Thus, defendants argue that we should disregard these paragraphs under the "sham-affidavit rule."

The sham-affidavit rule provides that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The rule is necessary because "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this

---

[1] Defendants also object to the "remaining paragraphs" in plaintiff's declaration as "irrelevant and immaterial" on the ground that plaintiff "does not [specify] the purported misconduct of Defendants Dunn, Indendi, and Kaylor." ECF No. 176 at 4. The court finds this objection unavailing; the generalized nature of the "remaining paragraphs" does not render them irrelevant or immaterial.

5

would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, "the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

To trigger the sham-affidavit rule, the court "must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* "The non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.*

Plaintiff's declaration is not a sham affidavit, and we will therefore disregard defendants' objections. Defendants correctly point out that plaintiff provided more details about his interaction with defendant Ruff in his declaration than at his deposition; but the declaration and deposition are not inconsistent. *Compare* Baldhosky Dep. 71:17-72:24 *with* Baldhosky Decl. ¶¶ 9-11. And contrary to defendants' contention, the present case is not analogous to *Yeager*. There, the deponent claimed to not remember key facts during his deposition, only to describe them at length in a later affidavit:

> According to the district court, "the deponent remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed." During his deposition, Yeager responded that he did not recall answers to approximately 185 different questions. For example, Yeager stated that he did not recall significant or difficult-to-forget events in the recent past, such as testifying in court or his involvement in a plane crash. In his declaration, Yeager provided no reason for his sudden ability to recall specific facts that he could not recall during his deposition other than stating that since his deposition he "reviewed several documents that have refreshed [his] recollection about some things [he] did not recall." The

6

> district court found this explanation to be "unbelievable given that Yeager was shown over twenty exhibits during his deposition in an attempt to refresh his recollection."

*Yeager*, 693 F.3d at 1080. Here, by stark contrast, plaintiff substantively and directly answered almost every question about defendant Ruff's alleged failure to change his soiled bandages at his deposition, and, in his declaration, he simply provided further detail. There was no inconsistency, so plaintiff's declaration need not be excluded under the sham-affidavit rule.

### B. Defendants' Objections to Godoy Declaration

Defendants object to the admissibility of the declaration of Nurse Godoy, plaintiff's expert, on the ground that it is untimely. ECF No. 176 at 5. The expert-discovery deadline in this case was December 14, 2018, ECF No. 167, but plaintiff filed his expert declaration on December 17, 2018, ECF No. 173-4.[2] Given the declaration's untimeliness, defendants contend that the court should decline to consider it under Rule 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Federal Rule of Civil Procedure 26(a)(2) directs a party to disclose to other parties the identity of any witness it may use at trial to present evidence. Fed. R. Civ. P. 26(a)(2)(A). For an expert witness, this disclosure must be accompanied by a written report prepared and signed by the expert. Fed. R. Civ. P. 26(a)(2)(B). If the disclosure is later found to be incomplete or incorrect, the providing party must supplement or correct the disclosure in a timely fashion. Fed. R. Civ. P. 26(e)(1)(A). For expert witnesses, the duty to supplement extends to both the report and information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.*

Here, defendants' objections to Godoy's declaration have some merit. Plaintiff disclosed

---

[2] Defendants acknowledge that plaintiff disclosed Godoy's expert report within the timeline set by the court, ECF No. 166; they take issue only with Godoy's declaration.

7

Godoy's expert report before the expert-discovery deadline of December 14, 2018. *See* ECF No. 167. However, with his opposition to defendants' motion for summary judgment, plaintiff filed Godoy's declaration, which included new, additional expert opinions that were not disclosed prior to the expert-discovery deadline. *See* Godoy Decl. ¶¶ 7-12 (opining that exposing a wound to feces can lead to infection, that a MRSA infection can cause death, and that it is sometimes appropriate for a nurse to deviate from a doctor's order). Though defendants' objections thus have some merit, we find that the addition of this new information was harmless. It is common knowledge that exposing a wound to feces can lead to infection, that a MRSA infection can cause death, and that a "nurse must use common sense and professional knowledge when carrying out a physician's orders." *Id.* Because these opinions could not have been a surprise to defendants, the late filing of Godoy's declaration is harmless. Therefore, the court will not decline to consider the nurse's opinions under Rule 37(c)(1).

### C. Plaintiff's Objections

Plaintiff raises numerous objections to defendants' evidence. ECF No. 173-1. These objections are immaterial to the court's ruling, and the court will therefore decline to address them. *See Norse*, 629 F.3d at 973.

### D. The Factual Record

In accordance with Local Rule 260, defendants filed a statement of undisputed facts, ECF No. 168-2, and plaintiff filed a reproduction of that statement with admissions and denials as appropriate, ECF No. 173-1. The court has reproduced the facts below, calling attention to material disputes.

#### i. The Parties

Plaintiff "suffers from a spinal cord injury and is confined to a wheelchair." TAC at 2 (punctuation altered). As a result of plaintiff's paraplegia, he has neurogenic bowels and is incontinent. *See* Baldhosky Decl. ¶ 7. From May 29, 2009 to July 29, 2010, plaintiff was incarcerated at the California Substance Abuse Treatment Facility and State Prison ("SATF"). Baldhosky Dep. 7:12-14, 8:12-19; Baldhosky ¶ 5.

Defendants are healthcare employees who, at all times alleged in the complaint, were

healthcare providers at CDCR. Defendant Ruff was a licensed registered nurse at SATF who acted as "gatekeeper" to all medical care at the clinic in Yard F. Baldhosky Dep. 68:8-12; *accord* TAC at 3. Defendants Dunn, Indendi, and Kaylor were licensed vocational nurses at SATF. TAC at 3.

### ii. Pressure Sores

In August 2008, CDCR officials initiated a plan of care for plaintiff "indicating that Mr. Baldhosky was at risk for impaired skin integrity related to decreased mobility." Godoy Rpt. at 3. Indeed, medical records show that plaintiff suffered from skin redness and dryness on his buttocks in April 2009. *Id.* By July 2009, plaintiff had developed pressure sores on his hip, buttock, and coccyx. *Id.* at 4. On July 17, 2009, Dr. Nyenke issued a telephone order for Baldhosky to receive wet-to-dry dressing changes once a day for his pressure sores. Esquivel Decl. Ex. A at 5. Baldhosky estimates he started receiving dressing changes in mid-August 2009. Baldhosky Dep. 42:4-13.

### iii. Defendant Ruff's Interactions with Plaintiff

On October 19, 2009, plaintiff "started the day with diarrhea and an unintended bowel movement that soiled [him] and the [pressure-sore] wound dressing that was attached with paper tape." Baldhosky Decl. ¶ 10. Plaintiff "took a shower to clean the feces off" and the "dressing came off in the wet environment." *Id.* Accordingly, plaintiff "went to the yard clinic for a clean dressing." *Id.*

Plaintiff and defendant dispute what happened next. According to plaintiff, after being made to wait for an unduly long time without treatment, plaintiff complained, and Ruff ordered plaintiff into her office. *Id.* Upon arrival, Ruff interrogated plaintiff "about why [he] violated her order to leave the dressing on at all times." *Id.* Plaintiff alleges that he then described the soiled condition of the dressing, but Ruff criticized him "for not holding the soiled dressing on to the open wound." *Id.* "She then stated that she would not permit the dressing to be replaced." *Id.* Following an acrimonious interaction with Ruff's colleague, plaintiff exited the clinic to the yard, where he accidentally fell out of his wheelchair. *Id.* ¶ 12. While plaintiff was on the ground, Ruff "appeared and asked in a condescending and sarcastic way, 'What are you doing on the

9

ground?'" *Id.* ¶ 13. Due to the foregoing events, plaintiff refused any assistance from Ruff. *Id.*

According to defendants, Ruff did not withhold treatment; plaintiff refused it:

> On October 19, 2009, at 1435 hours, Ruff saw Baldhosky for a dressing change and fall from his wheelchair. Baldhosky refused to allow Ruff to examine him because he "feared" for his "safety, health, and well-being." Despite Baldhosky's refusal to be treated, Ruff reminded him to return to the clinic in the evening for his dressing change.

Defendants' Statement of Undisputed Facts ¶ 10 (citing Medical Record 463, 464, 591; Ruff Dep. 165:17-174:2.).

### iv. Defendants Dunn, Kaylor, and Indendi's Interactions with Plaintiff

Plaintiff alleges that defendants Indendi, Dunn, and Kaylor "ignored the consequences of unintended [bowel movements] by failing to provide an opportunity to be clean, dry and to provide additional clothing." TAC at 15; *accord* Baldhosky Dep. 80:15-17. He further alleges that defendants' actions and inactions "created an environment in which skin breakdown would, and did, occur." TAC at 15. Specifically, plaintiff alleges that Indendi refused to change his soiled dressings on October 24, 2009. TAC 20-21. At his deposition, plaintiff could not specify the dates on which Indendi refused to change his dressing and explained that she told him to come back at his scheduled time for his dressing change—8 or 9 p.m. Baldhosky Dep. 77:1-78:12.

Plaintiff alleges that Kaylor refused to change his soiled dressings on November 13-14, 2009. TAC at 21. At his deposition, plaintiff testified that he could not recall how many times Kaylor refused to change his dressing, but that it occurred on at least on one occasion. Baldhosky Dep. 78:22-80:2. He further testified that Kaylor told him to come back at his scheduled dressing time. *Id.* He testified that on one occasion, he threatened to complain to the yard lieutenant when Kaylor refused to change his dressing, and that she then agreed to change his dressing—but he still had to wait about two hours before his soiled bandages were changed. *Id.*

Plaintiff alleges that Dunn refused to change his soiled dressings after unintended bowel movements on November 23, 2009. TAC at 21. At his deposition, plaintiff testified that he told

10

1 Dunn that he had a soiled dressing or that it came off during the shower, and that it needed to be
replaced. Baldhosky Dep. 80:22-81:2, 81:15-19. He testified that Dunn refused to change his
soiled bandages when requested and told him to "come back later." Baldhosky Dep. 80:22-81:2,
81:15-19.

Each defendant alleges that though they do not specifically recall any interaction with
plaintiff, based on their custom and practice, they would not have refused to change plaintiff's
soiled bandages. Dunn Decl. ¶¶ 3-5; Indendi Decl ¶¶ 3-5; Kaylor Decl. ¶¶ 3-8.

### v. Alleged Harm

On October 24, 2009—five days after Ruff's alleged misconduct and the day of Indendi's
alleged misconduct—the nurse who changed plaintiff's bandages became concerned about
plaintiff's wound and notified the on-call physician. Baldhosky Decl. ¶ 21. Plaintiff was then
transferred to a local hospital where he "was advised that [he] had a Stage III pressure sore
infected with MRSA." *Id.* ¶ 22. He remained at the hospital for eight days of treatment. *Id.*

Approximately ten days after being discharged from the local hospital, plaintiff alleges
that "Defendants continued their deliberate indifference to the dressing changes [that plaintiff]
required." Baldhosky Decl. ¶ 23. In a report from San Joaquin Community Hospital dated
December 19, 2009, physicians again detected MRSA in plaintiff's wound that had deteriorated
to a "Stage IV/unstageable pressure sore." Baldhosky Decl. ¶ 25.

## IV. DISCUSSION

We first consider whether defendants, the moving party, have met their initial burden of
"proving the absence of a genuine issue of material fact" and a prima facie entitlement to
summary judgment. *Celotex Corp.*, 477 U.S at 323. Defendants raise two primary arguments for
why they are entitled to summary judgment: (1) "they did not refuse to provide the medically
ordered dressing changes," and (2) "no evidence shows that Plaintiff suffered an injury as a result
of any delay in providing the dressing changes." ECF No. 168-1 at 6. We will address each
argument in turn.

### A. Whether the Evidence Shows that Defendants Refused to Change Plaintiff's Soiled Bandages

Defendants contend that the evidence shows that "Defendants did not refuse to provide, nor did they deny, Plaintiff the needed dressing changes." ECF No. 168-1 at 6. Specifically, with regard to defendant Ruff, defendants argue that the evidence shows that Ruff did not refuse to treat plaintiff; rather, plaintiff refused treatment. *Id.* And with regard to defendants Kaylor, Dunn, and Indendi, defendants argue that the evidence shows that "[s]ince Dr. Nyenke's July 17, 2009 order specified that the wound dressing be changed once a day, Plaintiff's bandage changes were clearly within the recommended number of daily wound changes regardless of any purported refusal or delay by Defendants." *Id.* at 7. We reject both arguments.

First, the evidence does not show that plaintiff merely refused treatment from Ruff. On the day in question, plaintiff alleges that he had had an inadvertent bowel movement, soiling his bandages. Baldhosky Decl. ¶ 10. He sought treatment from Ruff, who berated him for disobeying her order to leave the bandages on at all times. *Id.* Plaintiff then had an acrimonious interaction with Ruff's colleague, which led to him falling out of his wheel chair in the yard. *Id.* While plaintiff was on the ground, Ruff "appeared and asked in a condescending and sarcastic way, 'What are you doing on the ground?'" *Id.* ¶ 13. Due to the foregoing events, plaintiff refused any assistance from Ruff. *Id.* Plaintiff's refusal at this point does not nullify Ruff's alleged refusal to change his soiled bandages earlier in the day.

Second, the evidence does not show that, because a doctor had ordered dressing changes once daily, any delay in changing plaintiff's bandages was excusable as long as plaintiff's bandages were changed in the evening. Plaintiff alleges that he inadvertently soiled his bandages on several occasions, and common sense dictates that bandages soiled with feces should be change promptly—not only at the end of the day. Indeed, defendants Dunn, Kaylor, and Indendi concede in their declarations that it would be "risky" to not promptly change a soiled bandage. *See* Dunn Decl. ¶ 6 ("I had experience changing dressings for wounds, and was aware of the risks of leaving a soiled dressing intact for prolonged periods of time, especially if the dressing was soiled with fecal matter."); Kaylor Decl. ¶ 6; Indendi Decl. ¶ 6.

In sum, construing the evidence in favor of plaintiff, we find that defendants' first argument does not show their prima facie entitlement to summary judgment. We now consider their second.

### B. Whether the Evidence Shows that Plaintiff Was Harmed by the Purported Delay in the Changing of Plaintiff's Soiled Bandages

Defendants contend that, assuming defendants delayed changing plaintiff's soiled bandages, "no evidence shows that he sustained injury as a result of such delay." ECF No. 168-1 at 8. We disagree. There is sufficient evidence to infer that defendants' alleged failure to promptly change plaintiff's soiled dressings caused the deterioration of plaintiff's condition, perhaps even including MRSA. Three key factors allow us to make the inference.

First, plaintiff's expert opined that "[e]xposing a wound to feces can lead to infection." Godoy Decl. ¶ 7. Second, defendants Dunn, Kaylor, and Indendi concede in their declarations that it would be "risky" to not promptly change a soiled bandage. *See* Dunn Decl. ¶ 6; Kaylor Decl. ¶ 6; Indendi Decl. ¶ 6. Third, the sequence of the alleged facts—failures to promptly change a soiled bandage, followed by pressure sores and MRSA—suggest a possible causal relationship. Specifically, Ruff refused to change plaintiff's soiled bandages on October 19, 2009, and Indendi refused to change plaintiff's soiled bandages on October 24, 2009.[3] TAC at 21. Thereafter, on October 24, 2009, plaintiff was transferred to a local hospital where he "was advised that [he] had a Stage III pressure sore infected with MRSA." *Id.* ¶ 22. Likewise, after plaintiff's discharge from the hospital in early November 2009, plaintiff alleges that Kaylor and Dunn failed to change his wounds. TAC at 21. Shortly thereafter, in December 2009, plaintiff was readmitted to the hospital with a "Stage IV/unstageable pressure sore" with MRSA. Baldhosky Decl. ¶ 25.

In sum, construing the evidence in favor of plaintiff, we find that defendants' second argument

---

[3] Defendants argue that Indendi's alleged actions could not have caused plaintiff harm, because plaintiff had already been feeling unwell in the days prior to Indendi's alleged refusal to change plaintiff's soiled bandages. ECF No. 168-1 at 8. We disagree. Even assuming that Indendi's alleged actions did not cause plaintiff's infection, it would be justifiable to infer that his actions exacerbated it.

13

does not show their prima facie entitlement to summary judgment. Therefore, defendants have failed to meet their burden. There are genuine issues of material fact, and defendants are not entitled to summary judgment.

## V. QUALIFIED IMMUNITY

Defendants contend that they are entitled to qualified immunity. Qualified immunity shields government officials from monetary damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca*, 891 F.3d at 815.

To determine whether the law "clearly established" that the challenged conduct was unlawful, the court must consider whether the defendant "would have had fair notice that the action was unlawful." *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013). Qualified immunity does not attach when the law is "sufficiently clear that every reasonable official would have understood" that the conduct in question was unlawful. *See Rodriguez v. Swartz*, 899 F.3d 719, 732 (9th Cir. 2018). Although a binding precedent can help determine what a reasonable official would have known, "it is not necessary . . . that the very action in question has previously been held unlawful." *Id.* at 732 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017)). Qualified immunity does not attach in an "obvious case" of constitutional violation, even if the facts are novel. *See Rodriguez*, 899 F.3d at 734; *accord Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002).

The first prong—"whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right"—need not long delay us. *Felarca*, 891 F.3d at 815. As the court noted at the screening stage, plaintiff's allegations state an Eighth Amendment claim for deliberate indifference. ECF No. 31.

14

The second prong—"whether the law at the time of the challenged conduct clearly established that the conduct was unlawful"—is likewise easily answered in the affirmative. *Felarca*, 891 F.3d at 815. We frame the question as follows: Was it clearly established that refusing to change a prisoner's soiled bandage for hours is unconstitutional? We believe that it was. Defendants would have been on notice that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Supreme Court has also clearly established that prisoners must be protected from serious risks to their health. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Plaintiff's allegations, viewed in the light most favorable to plaintiff, show that the failure to change soiled bandages promptly was a serious risk to plaintiff's health.

The court is unpersuaded by defendants' argument that "it was not clearly established that Defendants would or could have known that following the doctor's orders and providing Plaintiff a dressing change a day would violate Plaintiff's constitutional rights." ECF No. 168-1 at 10. As defendant succinctly states, "The issue is not whether Defendants had a duty to violate a physician's orders. The issue is whether Defendants acted with deliberate indifference to an obvious threat to Plaintiff's health and safety." ECF No. 173 at 9.

Plaintiff's allegations have satisfied both prongs of the qualified immunity inquiry. Thus, defendant is not entitled to qualified immunity.

## VI. FINDINGS AND RECOMMENDATION

Accordingly, we recommend that defendants' motion for partial summary judgment, ECF No. 168, be denied.

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections

within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: May 6, 2019

                                                UNITED STATES MAGISTRATE JUDGE

No. 203.