# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAYMOND BALDHOSKY,** | 1:12-cv-01200-LJO-JDP |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS IN LIMINE (ECF No. 200)** |
| **SUSAN HUBBARD,** *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

This case concerns Raymond Baldhosky's ("Mr. Baldhosky" or "Plaintiff") claims under 42 U.S.C. § 1983 for injuries sustained while Mr. Baldhosky was incarcerated at the California Substance Abuse Treatment Facility and State Prison ("SATF") and the California State Prison—Corcoran Correctional Treatment Facility ("CTC"). Mr. Baldhosky's Third Amended Complaint, filed on October 28, 2015, states claims under Section 1983 alleging that Defendants were deliberately indifferent to Plaintiff's safety in violation of the Eighth and Fourteenth Amendments. ECF No. 28. This matter is set for trial on October 15, 2019 at 1:30 p.m. Pursuant to the deadlines set forth in the Pretrial Order, Defendants filed motions in limine on July 22, 2019. ECF No. 200. Plaintiff filed oppositions on July 31, 2019. ECF Nos. 221–229. After reviewing the filings, the Court took the motions in limine under submission on the papers.

## II. DEFENDANTS' MOTIONS IN LIMINE

Defendants bring nine motions in limine to: (1) preclude Plaintiff from offering opinions about the cause of his sores and infections or the treatment and accommodations he should have received; (2)

1

preclude evidence of Plaintiff's military service; (3) establish the relevancy of Plaintiff's felony conviction for credibility purposes; (4) preclude Plaintiff from testifying about or introducing evidence of dismissed defendants and claims; (5) preclude evidence of the federal receiver and pending class actions regarding California prisoner medical care; (6) preclude Plaintiff and his counsel from testifying, arguing, or eliciting testimony about the California Department of Corrections and Rehabilitation's ("CDCR") healthcare, classification, housing, or other policies and procedures; (7) exclude from evidence "numerous witnesses," including Paige Baldhosky and Josephine Sinclair, and certain medical billing records; (8) preclude Plaintiff from introducing evidence about or seeking to recover medical costs incurred for treatment at the Department of Veteran Affairs ("VA") and Ventura County Medical Center ("VCMC"); and (9) exclude expert witness opinions Defendants contend are "untimely, irrelevant, and unsupported." ECF No. 200. The Court will address each motion in turn.

**A.    Motion to Preclude Plaintiff from Offering Opinions About the Cause of His Sores and Infections or the Treatment and Accommodations He Should Have Received**

Defendants seek to limit Mr. Baldhosky's testimony by preventing Mr. Baldhosky from making any statements regarding "his skin breakdown, what stage of the skin-breakdown process he was in at specific times when he treated with Defendants, what accommodations he should have been provided with to prevent or resolve skin breakdown, and that his MRSA or other infections were caused by a specific event or Defendant." ECF No. 200 at 1–2. In response, Mr. Baldhosky argues that given his life experiences being wheelchair-bound, individuals like Mr. Baldhosky are "vigilant about pressure ulcers and knowledgeable about how to identify them, effective methods to mitigate their development, and the risks associated with untreated sores." ECF No. 221 at 4. Indeed, the parties agree that Mr. Baldhosky can offer testimony "as to what he experienced, felt, saw, and did concerning his ulcers, what he did in response to the relevant physical symptoms he developed, and what he communicated to his providers." ECF No. 200 at 2; ECF No. 221 at 3.

Based on the arguments presented by the parties, the Court is unable to rule on the motion to

preclude Mr. Baldhosky from offering opinions related to his sores and infections. The Court will determine Defendants' objections on a question-by-question basis at trial.

**B.      Motion to Exclude Plaintiff's Military Service**

Defendants move to exclude evidence of Mr. Baldhosky's military service under Federal Rules of Evidence 402, 403, and 404. ECF No. 200 at 2. Specifically, Defendants contend Mr. Baldhosky's military service is neither relevant nor probative. *Id.* Defendants further argue Mr. Baldhosky's military service is prejudicial to Defendants. *Id.* Mr. Baldhosky asserts "he derives much of his personal discipline and drive from" his training as an Army Ranger. ECF No. 222 at 3. He also contends that "he drew upon the traits he developed while in the military as the basis for his persistence . . . in pursuing the accommodations and treatment he sought while incarcerated at SATF, even in the face of repeated delays and rejections." *Id.* Therefore, Plaintiff's military service is relevant. The evidence will not confuse the jury nor waste time. Any prejudice will be substantially outweighed by its probative value. Defendants' motion is denied.

**C.      Motion to Raise Plaintiff's Felony Conviction**

Defendants seek to elicit testimony regarding Mr. Baldhosky's conviction and length of incarceration. ECF No. 200 at 4–5. Mr. Baldhosky does not oppose the Defendants' motion, provided the information is limited to: (1) Mr. Baldhosky was convicted of a "felony," and (2) was sentenced to a 4-year term of imprisonment. ECF No. 223 at 2.

The parties may introduce testimony that Mr. Baldhosky has been convicted of a felony and his length of confinement. The parties may not provide any further details regarding Mr. Baldhosky's conviction. If Defendants object to the limitation, they must advise the Court on the morning of trial before the panel is brought into the courtroom. Defendants' motion is granted.

**D.      Motion to Preclude Plaintiff from Testifying About or Introducing Evidence of Dismissed Defendants and Claims**

Defendants seek to preclude Plaintiff from testifying about or introducing evidence of dismissed

defendants and claims. ECF No. 200 at 5–6. Defendants argue that testimony relating to Plaintiff's interactions with dismissed parties or dismissed claims will confuse the jury, waste time, and prejudice Defendants. *Id.* Plaintiff argues that his "interactions with other treaters, and the manner in which they altered the course of his treatment, will contextualize the circumstances that led him to seek treatment and accommodation from the individual Defendants and the status of his medical condition at that time." ECF No. 224 at 3. Defendants' motion is denied without prejudice for reasons set forth in Plaintiff's opposition. Plaintiff, however, may not mention that these people were ever defendants, since that is irrelevant. Nothing in this ruling precludes Defendants from asserting relevancy objections at trial.

**E.    Motion to Exclude Evidence of the Federal Receiver and Pending Class Actions**

Defendants next move to exclude evidence of the federal receiver and pending class actions regarding prisoner medical care in California. ECF No. 200 at 6–7. Defendants contend that the federal receiver, the class actions in *Plata v. Brown*, No. C01-1351 THE (N.D. Cal.), *Coleman v. Brown*, No. 2:90-cv-0520 (E.D. Cal.), and *Armstrong v. Brown*, No. C 94-2307 CW (N.D. Cal.), and the prison medical system generally are irrelevant and highly prejudicial. ECF No. 200 at 6–7. In support of this argument, Defendants assert the receiver's appointment, the finding of California's prison medical system to be inadequate, and other pending class actions have no tendency to prove that Defendants' acts or omissions harmed Plaintiff. *See id.* at 7. Defendants concede, however, that some limited discussion of *Armstrong* may be necessary to explain the role and duties of Defendant Byers in responding to Americans with Disabilities Act inmate appeals and available accommodations. *See id.*

Plaintiff states the "evidence will be that Defendants work in an environment that validates inadequate medical services to sub-humans, that Defendants knew the risk to inmate/patients of failing to provide Mr. Baldhosky preventative health care planning given the risk of skin breakdown, and of failing to provide adequate treatment during the presence of pressure ulcers, that Defendants had authority to press health care providers and administrators to provide Mr. Baldhosky the needed treatment to alleviate his suffering." ECF No. 225 at 3. Plaintiff further contends that Defendant Ruff

4

previously testified about the health care environment before and after the appointment of the receivership. *Id.* (citing Ruff Dep. 62–65 (ECF No. 225-1)). Moreover, given Defendants' testimony that they were not allowed to provide Mr. Baldhosky accommodations and medical treatment, as well as their concession to allow some limited discussion of *Armstrong*, Plaintiff argues he must be able to "describe the system, and its history, to challenge testimony intended to shift the blame" for Defendants' deliberate indifference. ECF No. 225 at 3.

Defendants' motion is granted for the reasons set forth in Defendants' motion. However, this ruling is subject to reconsideration should Defendants open the door to the admission of such evidence by, for example, attempting to justify denial of medical care by referencing the receivership or *Plata/Armstrong*.

### F. Motion to Preclude Plaintiff from Eliciting Testimony Regarding CDCR Regulations

Defendants next move to preclude Plaintiff and his counsel from testifying, arguing, or eliciting testimony about the CDCR's healthcare, classification, housing, or other policies and procedures. ECF No. 200 at 7–8. Defendants argue Plaintiff never identified the policies and procedures Plaintiff contends are relevant despite Defendants' discovery request for all documents supporting Plaintiff's: (1) claim for compensatory damages; (2) claim that Defendants implemented a policy to deprive him of his rights; and (3) allegations regarding specific Defendants. *Id.* at 8. Defendants further argue that Plaintiff and Plaintiff's expert have no expertise in prison management, classification, programming of inmates, or healthcare policy. *Id.*

The Court has reviewed the discovery requests Defendants cite and finds that the actual text of the requests is disconnected from what Defendants contend they propounded. *See* ECF No. 202 at RFP No. 3 (requesting documents supporting compensatory damages claims cannot be readily interpreted to comprise CDCR policies and procedures); *id.* at RFP No. 9 ("Produce all DOCUMENTS EVIDENCING the allegation that defendants 'implemented a policy that deprived Plaintiff of his constitutional rights'" cannot be interpreted to encompass CDCR policies and procedures) (emphasis in

5

original); *id.* at RFP Nos. 10–13, 19–21 (requests regarding specific individuals cannot be readily interpreted to include CDCR policies and procedures).

Because the argument anticipates Plaintiff will testify or elicit testimony regarding prison management, classification, or programming of inmates, Defendants can vigorously cross-examine Plaintiff's witnesses at trial. In all other respects, the Court cannot rule on Defendants' motion at this time, and specifically not until a question has been formed and a proper objection made.

### G. Motion to Exclude Plaintiff's Purportedly Untimely Disclosed Witnesses and Documents

#### 1. Witnesses

Defendants seek to exclude from evidence "numerous witnesses" that Plaintiff "never identified or disclosed during discovery." ECF No. 200 at 9. Other than Paige Baldhosky and Josephine Sinclair, Defendants fail to specify which witnesses they seek to exclude. Plaintiff attempts to respond to Defendants' motion, stating "[a]ll but four of Defendants' witnesses are named on Plaintiff's witness list," but identifies "14 witnesses as possible subjects of Defendants' motion." ECF No. 227 at 3. Plaintiff's opposition is silent regarding Paige Baldhosky and Josephine Sinclair. *See generally* ECF No. 227.

Defendants' motion is insufficiently detailed except for Paige Baldhosky and Josephine Sinclair. Defendants' motion is granted as to the exclusion of Paige Baldhosky and Josephine Sinclair as witnesses. Defendants' motion is denied for the remaining "numerous witnesses."

#### 2. VA and VCMC Medical Billing Records

Defendants also move to exclude the VA and VCMC medical billing records and photographs produced on July 19, 2019 on the grounds they were not timely produced. ECF No. 200 at 10–11. In response, Plaintiff argues he repeatedly raised the difficulties of obtaining VA billing records. ECF No. 227 at 6. Indeed, Defendants' counsel responded he did "not have any objection to [Plaintiff] producing VA billing statements late." ECF No. 227-1 at 3. Therefore, the Court finds Defendants waived any objection to late disclosures of the VA billing records.

6

Moreover, the VA initially produced medical records to Plaintiff, but did not produce photographs. ECF No. 227 at 6–7. According to Plaintiff, the VA eventually produced the photographs after several additional inquiries. *See id.* Plaintiff asserts he immediately produced the photographs to defense counsel when he received them. *See id.* Plaintiff further contends that he will authenticate the photographs at trial.

The Court finds that Plaintiff's belated disclosure of the photographs was through no fault of his own. Plaintiff's continuing obligation to disclose has been fulfilled. Defendants have not shown prejudice. Accordingly, Defendants' motion is denied.

### 3. **Improper Motion in Limine**

Plaintiff includes in his opposition a request for the Court to exclude certain of Defendants' custody witnesses who Plaintiff contends will offer opinion testimony. ECF No. 5. Plaintiff states Defendant failed to identify these witnesses. *Id.* This request should have been raised before the motion in limine deadline. Plaintiff chose not to file any motions in limine. Plaintiff's request is procedurally improper and untimely. Thus, Plaintiff's request is denied.

## H. **Motion to Exclude Evidence About or Seeking to Recover Medical Costs Incurred for Treatment at the VA or VCMC**

Defendants also seek to preclude Plaintiff from introducing evidence about or seeking to recover medical costs or liens incurred for treatment at the VA and VCMC. ECF No. 22 at 11–12. As noted above, Defendants waived any arguments regarding untimely disclosure. ECF No. 228-1 ("I do not have any objection to your producing VA billing statements late"). Next, Defendants contend the billing records contain costs for irrelevant medical procedures. ECF No. 200 at 11. The Court fully expects that any evidence regarding VA or VCMC medical costs will be offered to show medical necessity or cause and effect. If Defendants have any objections, they can raise them at trial.

Defendants also state that Plaintiff did not include in his discovery responses his hospitalization at the VA or VCMC. *See id.* Defendants cite their interrogatories requesting Plaintiff to "state all facts

7

that support [Plaintiff's] contention that [Plaintiff] sustained injury or harm as a result of [the specific Defendant's] acts or omissions." *Id.* Plaintiff objected to Defendants' discovery requests as vague and ambiguous, among other reasons. ECF No. 206. Defendants never filed any motions to compel Plaintiff's discovery responses, yet now seeks to exclude such evidence shortly before trial. Defendants' motion is denied without prejudice.

**I.     Motion to Exclude Plaintiff's Experts' Opinions**

Defendants' final motion in limine seeks to exclude expert witness opinions Defendants contend are "untimely, irrelevant, and unsupported." The Court will address each in turn.

    **1.     Expert Opinions on Dressing Changes**

Defendants seek to exclude Dr. Patterson's and Nurse Godoy's expert opinions regarding dressing changes. ECF No. 200 at 14. Defendants argue "neither Dr. Patterson nor Nurse Godoy offered any opinion in their reports about dressing changes, whether exposure to fecal matter *could* cause an infection, and when it was permissible for a nurse to deviate from a doctor's order concerning the frequency of dressing changes." ECF No. 200 at 14 (citing ECF Nos. 203–204). Defendants' contention is without merit. Dr. Patterson opines in his report that to "accomplish bowel care, patient required bedside bowel care assistance so as to not disturb the operation site. None was provided." ECF No. 203 at 4. The importance of proper wound care is contained throughout Nurse Godoy's expert report. *See generally* ECF No. 204. Defendants were not denied the opportunity to adequately examine Plaintiff's expert witnesses. The Court finds no good cause to re-open expert discovery. Therefore, Defendants' motion is denied on this ground.

    **2.     Nurse Godoy's Testimony**

Defendants next seek to preclude Nurse Godoy from testifying about the standard of care for Physicians, Physician Assistants ("PA"), and Nurse Practitioners ("NP"). ECF No. 200 at 15. In response, Plaintiff states he does not intend to ask Nurse Godoy to render standard of care opinions about Physicians, PAs, or NPs. Thus, Defendants' motion on this basis is moot. The Court anticipates

that Plaintiff will establish Nurse Godoy's expertise at trial. The Court does not see any issues with Nurse Godoy opining regarding how the body functions and physical causes and effects, so long as her testimony does not include opinions regarding whether a Physician's, PA's, or NP's performance fell below the standard of care.

Defendants also seek to exclude Nurse Godoy's testimony regarding the acts or omissions of unidentified or third-party nurses. *See id.* Plaintiff counters that "[t]estimony about nursing in general implicates nurses generally . . . . Excluding testimony about nursing assessments whether initially or later denies Plaintiff evidence of the context in which Defendants deliver health care." ECF No. 229 at 6. Ms. Godoy may testify generally about the practice of nursing.

As to the unnamed nurses, the objection is sustained until and unless the gaps have been filled to connect the unnamed nurses with the named Defendant nurses. Once or if that link has been established, the objection will be overruled. As to the named third-party nurses, Defendants' motion is overruled because it goes to the issue of the percentage of liability.

### 3. Dr. Patterson's Testimony

Lastly, Defendants seek to preclude Dr. Patterson from testifying regarding Plaintiff's bladder health, urinary infections, and Plaintiff's reduced life expectancy based on Plaintiff's suprapubic catheter and limited mobility. ECF No. 200 at 16–17. Defendants argue these issues are irrelevant to the adequacy of Plaintiff's medical care for his pressure ulcers and related infections. *See id.* Moreover, Plaintiff dismissed the matter of *Baldhosky v. State*, No. 1:14-cv-00166-LJO-JPD, which involved claims for Plaintiff's neurogenic bladder and related infections. ECF No. 200 at 16. Additionally, Defendants seek to limit Dr. Patterson from opining whether the nurse Defendants' actions fell below the standard of care because he purportedly could not specify what conduct the nurse Defendants engaged in that fell below the standard of care. *Id.* at 16–17.

Plaintiff contends that Dr. Patterson's opinion is that Plaintiff's bladder health, life expectancy, and nurse performance are directly related to skin breakdown. ECF No. 229 at 7. For example, Plaintiff

raises Dr. Patterson's testimony that a poor urological condition promotes an increase in "bioburden." *Id.* (citing Patterson Dep. 55:15–57:4 ("when you have a wound, [the whole point] is to try and keep it clean. So it's not just his complaints, but maybe there was stool that got into the wound. If your bioburden in your body is high because of a thing like repetitive urinary tract infections, it's not uncommon to have . . . blood spread infection into the soft tissues from an infection" and "[i]t's my opinion [UTI's are] a contributing factor [to pressure sores]." (ECF No. 205)). Dr. Patterson also testified that given Plaintiff's condition, he "should be turned every two hours," but noticed "a lack of medical entries throughout the chart of turning [Plaintiff] every two hours." Patterson Dep. 106:15–22. While Dr. Patterson conceded he did not give the specific day the nurse Defendants "were negligent in their duties for not turning the patient when they should," he noted "the frequency with which the patient is being seen by the medical staff is below standard." *Id.* at 109:22–110:3. In sum, Plaintiff argues the appropriate remedy is for Defendants' experts to disagree or cross-examine Dr. Patterson on his knowledge regarding nursing care contributing to Plaintiff's harms. ECF No. 229 at 7.

Dr. Patterson's designation coupled with his report provide not only qualifications of the designated expert, but also notice to Defendants remains within the realm of factual dispute to be determined by the trier of fact. Defendants' motion in limine is denied.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motions in limine are GRANTED in part, and DENIED in part.

IT IS SO ORDERED.

   Dated:   **August 23, 2019**          /s/ Lawrence J. O'Neill
                                                         UNITED STATES CHIEF DISTRICT JUDGE